UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DANE O'NEAL PERKINS**            **CIVIL ACTION**

**VERSUS**            **No. 14-2199**

**MANSON GULF, L.L.C.**            **SECTION I**

### ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiff for conditional certification of the above-captioned matter as a collective action. Defendant, Manson Gulf, LLC ("Manson Gulf"), opposes the motion.[2] For the following reasons, the motion is **GRANTED IN PART**.

### BACKGROUND

Plaintiff filed a complaint in the above-captioned matter on September 23, 2014,[3] alleging that he was employed by Manson Gulf and "was not properly compensated for all hours worked in excess of 40 hours per week."[4] Plaintiff also filed his lawsuit on behalf of similarly situated employees who were not compensated for various meetings and travel time and who were deprived of overtime pay in violation of the Fair Labor Standards Act ("FLSA").[5] *See* 29 U.S.C. § 207(a)(2).[6] Plaintiff contends that Manson Gulf willfully violated the FLSA and that it must compensate him and a class of similarly situated workers for unpaid overtime wages, as

---

[1] R. Doc. No. 22.
[2] R. Doc. No. 23.
[3] R. Doc. No. 1.
[4] R. Doc. No. 1, ¶ 3.
[5] R. Doc. No. 1, ¶¶ 5, 12-13.
[6] 29 U.S.C. § 207(a)(2) provides that "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

well as reasonable attorney's fees and costs.[7] Plaintiff requests that the Court conditionally certify this case as a collective action and authorize notice to "[a]ll current and former hourly offshore personnel who have been employed at any time by defendant Manson Gulf, LLC within the past three years."[8]

## LAW AND ANALYSIS

### I.   Conditional Certification

The FLSA provides that an action to recover "unpaid overtime compensation . . . may be maintained against any employer . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, the FLSA does not define "similarly situated" or otherwise explain how the certification of such collective actions should proceed. Likewise, the U.S. Court of Appeals for the Fifth Circuit has not established a procedure for district courts to follow. *E.g.*, *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) ("Like several other circuits, this court has never set a legal standard for collective-action certification.").

There are two main lines of authority that prescribe different methods of determining whether a case may proceed as a collective action pursuant to § 216(b). *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995).[9] The first is known as "two-stage class certification," which was developed in a line of cases starting with *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and the second is referred to as "spurious" class certification, as

---

[7] R. Doc. No. 1, ¶¶ 16, 21.
[8] R. Doc. No. 22-1, at 6 (emphasis and capitalization omitted).
[9] The Court notes that *Mooney* and other cases cited herein involve claims under the Age Discrimination in Employment Act ("ADEA"), which explicitly incorporates § 216(b) and the FLSA collective action provisions. *See Mooney*, 54 F.3d at 1212. Accordingly, such cases are fully applicable here.

2

typified by *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).[10] Because the two-stage class certification procedure is routinely used by all sections of this Court, and because the parties use this approach,[11] the Court finds that the *Lusardi* procedure is appropriate in this case. *See also Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2014 WL 5810529, at *1-3 (E.D. La. Nov. 7, 2014) (Africk, J.).

## II. *Lusardi* Analysis

The Fifth Circuit has explained the typical *Lusardi* procedure:

> Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action through discovery.

*Mooney*, 54 F.3d at 1213-14 (footnote omitted); *see also Roussell*, 441 F. App'x at 226; *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 518-19 (5th Cir. 2010).

The second stage of the *Lusardi* procedure "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214. The Fifth Circuit observed that "the *Lusardi* . . . line

---

[10] The spurious class certification procedure uses the factors employed by Rule 23(a) of the Federal Rules of Civil Procedure—numerosity, commonality, typicality, and adequacy of representation—to determine if a collective action should be certified pursuant to § 216(b). *Mooney*, 54 F.3d at 1214. "Under this methodology, the primary distinction between [an FLSA] representative action and a [Rule] 23 class action is that persons who do not elect to opt-in to the . . . representative action are not bound by its results. In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results." *Id.* at 1214.
[11] *See* R. Doc. No. 22-1, at 12; R. Doc. No. 23, at 3.

of cases, by its nature, . . . lends itself to *ad hoc* analysis on a case-by-case basis." *Id.* at 1213. Only the first stage is implicated by the instant motion.[12]

The "lenient standard" at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). However, "[w]hile the standard at this stage is 'not particularly stringent,' it is by no means automatic." *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (Fallon, J.) (citation omitted) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1213 (11th Cir. 2001)). "[T]he Court is mindful that it must guard against 'fishing expeditions' at employers' expense." *White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 WL 2903070, at *6 (E.D. La. June 13, 2013) (Morgan, J.).

"[A]n FLSA class determination is appropriate when there is 'a demonstrated similarity among the individual situations . . . [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877-78 (E.D. La. 2008) (Zainey, J.) (quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92-43, 1992 WL 91946, at *4-5 (E.D. La. Apr. 16, 1992) (Feldman, J.)). As stated, this determination is usually made based on "the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214. "Thus, a court can foreclose a plaintiff's right to proceed collectively only if 'the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'" *Xavier*, 585 F. Supp. 2d at 878 (quoting *Crain*, 1992 WL 91946, at *5).[13]

---

[12] *See, e.g.*, R. Doc. No. 23, at 3 n.3.
[13] U.S. District Courts in the Southern District of Texas have framed the standard in this way: "At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for

4

The complaint alleges that plaintiff and similarly situated hourly employees who worked offshore "were not paid for participation in: (a) mandatory daily safety meetings prior to or subsequent to the start of their twelve-hour shifts; (b) travel time spent mobilizing and demobilizing prior to and following each hitch; (c) mandatory fire and abandon drills; (d) mandatory man overboard drills; (e) mandatory muster drills; and (f) other work-related activities."[14] The complaint states that "[p]laintiff is aware of other current and former employees of Defendant who are similarly situated in that they were not properly paid for the hours they worked."[15] Plaintiff alleges that he and these similarly situated workers "were not paid for all hours worked in excess of forty hours [per] week and they were not paid at the appropriate overtime rate based on all remuneration received."[16]

Attached to plaintiff's motion is an affidavit by plaintiff which provides more detail regarding the allegations in the complaint.[17] Plaintiff worked for Manson Gulf as a rigger from June 2012 to March 2014.[18] Plaintiff states that he "was assigned to work aboard the E.P. PAUP which was owned and operated by Manson Gulf" and that there were approximately 30 other Manson Gulf "employees consist[ing] of riggers, mechanics, oilers and crane operators."[19] Plaintiff "work[ed] side-by-side with these individuals to perform [his] duties."[20] Plaintiff also

---

crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. 07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (Rosenthal, J.). The Court notes that it would reach the same conclusion under this three-pronged framework.

[14] R. Doc. No. 1, ¶ 12.
[15] R. Doc. No. 1, ¶ 14.
[16] R. Doc. No. 1, ¶ 12.
[17] *See* R. Doc. No. 22-2.
[18] R. Doc. No. 22-2, ¶ 2.
[19] R. Doc. No. 22-2, ¶ 3.
[20] R. Doc. No. 22-2, ¶ 4.

attended the safety meetings with these individuals[21] and traveled with these individuals to and from his worksite.[22]

Plaintiff states that all these workers were paid hourly[23] and that they worked similar hours on similar hitches.[24] Plaintiff attests that he and his fellow hourly offshore personnel were not paid for the safety meetings and travel time,[25] and that this policy "was Manson Gulf's payroll practice throughout my period of employment and was applicable to all Manson Gulf hourly offshore personnel company wide."[26] Plaintiff attests that "other hourly offshore personnel would participate in a lawsuit to recover unpaid compensation,"[27] and that all of his statements "are within my personal knowledge and are true and correct."[28]

The Court finds that the complaint and plaintiff's affidavit set forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. The policy of failing to pay for allegedly compensable meetings and travel time constitutes a "factual nexus which binds the named plaintiffs and the potential class members together." *Xavier*, 585 F. Supp. 2d at 877-78 (internal quotation marks omitted). There is no indication that this policy "relates to specific circumstances personal to the plaintiff," *id.* at 878, and plaintiff has attested that it is within his personal knowledge that all offshore hourly employees were paid pursuant to this policy company-wide.[29] Accordingly,

---

[21] R. Doc. No. 22-2, ¶¶ 6-7.
[22] R. Doc. No. 22-2, ¶¶ 8-9.
[23] R. Doc. No. 22-2, ¶ 4.
[24] R. Doc. No. 22-2, ¶ 5.
[25] R. Doc. No. 22-2, ¶¶ 5-9.
[26] R. Doc. No. 22-2, ¶ 7.
[27] R. Doc. No. 22-2, ¶ 10.
[28] R. Doc. No. 22-2, ¶ 1.
[29] Manson Gulf suggests that the class should be limited to only those employees who worked aboard the E.P. PAUP, where plaintiff worked. R. Doc. No. 23, at 6 n.6. However, Manson Gulf has not demonstrated, or even argued, that its payroll policies were ship-specific, and plaintiff

plaintiff has satisfied his lenient burden, and through discovery this matter should proceed as a collective action.

Manson Gulf emphasizes that plaintiff has not identified any other particular individual who is interested in joining the class, and it asserts that this is a sufficient reason to deny plaintiff's motion.[30] However, "in the Fifth Circuit, there is no categorical rule that Plaintiffs must submit evidence at this time that other [individuals] seek to opt-in to this case." *White*, 2013 WL 2903070, at *7; *see also Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 915-16 (S.D. Tex. 2010) (Johnson, M.J.); *but see, e.g.*, *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 805 (S.D. Tex. 2010) (Rosenthal, J.) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)). Regardless, plaintiff asserts in his affidavit that he knows other similarly situated individuals will join the litigation.[31] Affidavits from such individuals

---

has attested that it is within his personal knowledge that the payroll policy was company-wide, as stated above. To the extent that Manson Gulf challenges the basis for plaintiff's personal knowledge, *see* R. Doc. No. 23, at 8, it has not provided any evidence to rebut plaintiff's assertions. Accordingly, plaintiff's affidavit, "declare[d] under penalty of perjury," R. Doc. No. 22-2, ¶ 11, is sufficient to sustain his lenient burden. *See, e.g.*, *Wellman*, 2014 WL 5810529, at *4 n.20; *Skelton v. Sukhothai, LLC*, , 787 (E.D. La. 2014) (Berrigan, J.); *see also Kuperman v. ICF Int'l*, No. 08-565, 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008) (Barbier, J.). Although plaintiff has not provided the Court with a wealth of evidence such as that which has been presented in other cases, the complete lack of any countervailing affidavits or other contradictory evidence counsels in favor of conditional certification.

[30] R. Doc. No. 23, at 4-7, 10-11.

[31] This is sufficient to distinguish the above-captioned matter from *Khan v. Cougar Stop, Inc.*, No. 06-2862, 2007 WL 2777774 (S.D. Tex. Sept. 21, 2007) (Stacy, M.J.), cited by Manson Gulf. *See* R. Doc. No. 23, at 6. In *Khan*, "[t]he only evidence submitted by Khan that there are 'similarly situated' individuals who were affected by Defendants' alleged wage practices" was a statement in plaintiff's affidavit that "[b]ased upon discussions with my co-workers who are employees of Defendants, other employees of Defendants were, and are, not paid their overtime wages and minimum wage." 2007 WL 2777774, at *2. The U.S. Magistrate Judge found that "Khan has not identified one person by name *or description* who was employed by Defendants under the same allegedly objectionable terms and conditions as he was." *Id.* (emphasis altered from original). Conversely, as stated above, plaintiff has attested that, at minimum, approximately 30 of his co-workers aboard the E.P. PAUP were subject to the same policy, that this policy was company-wide, and that similarly situated individuals will join the litigation.

7

"are not required and a named plaintiff may submit some other form of evidence that the additional aggrieved persons exist and want to join the suit." *McKnight*, 756 F. Supp. 2d at 805 (internal quotation marks omitted). Plaintiff's statements in his affidavit are comparable to the statements that the court was presented with in *McKnight*.[32] Accordingly, Manson Gulf's assertion is without merit.

Manson Gulf also objects that plaintiff "wants to certify a class that includes a broad spectrum of employees who worked in various positions."[33] The hourly offshore workers identified by plaintiff, however, are all skilled laborers working aboard vessels, "consist[ing] primarily of riggers, mechanics, oilers and crane operators."[34] "The court need not find uniformity in each and every aspect of employment to determine a class of employees [is] similarly situated." *Maynor*, 2008 WL 2220394, at *7. "If one zooms in close enough on anything, differences will abound; . . . [b]ut plaintiffs' claims need to be considered at a higher level of abstraction." *Roussell*, 441 F. App'x at 226 (alterations in original) (internal quotation marks omitted). Plaintiff contends that he and his fellow skilled laborers were paid pursuant to

---

Manson Gulf also asserts that plaintiff's affidavit "lacks personal knowledge, lacks foundation, and is conclusory," R. Doc. No. 23, at 7 (citing *Khan*), and that "'uncorroborated assertions, without more, do not fulfill the plaintiff's burden under *Lusardi*,'" R. Doc. No. 23, at 7 (quoting *Treme v. HKA Enters., Inc.*, 2008 WL 941777, at *3 (W.D. La. Apr. 7, 2008) (Melancon, J.)). However, as described above, plaintiff's affidavit states that it is based on personal knowledge, and it describes the basis for his knowledge. *Cf. Treme*, 2008 WL 941777, at *3 ("In this case, the sole basis presented for conditional certification is an affidavit of one of the named plaintiffs, Treme, stating that, upon 'information and belief,' there are others similarly situated; however, there is no indication in the record of what facts, if any, form the basis of this 'information and belief.'").

[32] *See McKnight*, 756 F. Supp. 2d at 805 ("There are a lot of people who worked for the Defendants over the last three years, and while I was there many of us would talk about (among other things) whether it was fair or legal for the club to keep money from our tips. I know there are other people affected by this policy that would be interested in knowing about this case and who would consider participating.").

[33] R. Doc. No. 23, at 8.

[34] *E.g.*, R. Doc. No. 22-1, at 8.

the same policy, and refusing to conditionally certify this case because of the differences in the specific details of each potential class member's daily tasks, where the workers otherwise perform the same general kind of work under the same conditions and for the same hours, would be inappropriate at this early stage.

Likewise, without a fully developed record, the Court cannot readily examine defendant's assertion that its defense requires individualized analysis.[35] An argument that "defendant[] would be claiming disparate defenses against the various class members . . . is better reserved for a motion to decertify after notice and discovery." *Skelton*, 994 F. Supp. 2d at 787; *see also White*, 2013 WL 2903070, at *6 ("The Court recognizes that Defendants may succeed in having this case decertified. Nevertheless, the Court finds that Plaintiffs, at this time, have satisfied their lenient burden and have demonstrated 'a reasonable basis for the allegation that a class of similarly situated persons may exist.'").

The Court notes that plaintiff's proposed class definition does not limit the proposed class to the types of skilled laborers that he has identified.[36] Although the record does not reflect whether Manson Gulf employed any hourly offshore personnel who were not skilled laborers, it is clear from plaintiff's motion and affidavit that his proposed collective action is directed to those "hourly offshore personnel with whom I worked."[37] Plaintiff describes such co-workers as "riggers, mechanics, oilers and crane operators"[38] with whom he "work[ed] side-by-side."[39] Accordingly, the Court conditionally certifies the above-captioned matter as a collective action

---

[35] R. Doc. No. 23, at 9-10.
[36] *See* R. Doc. No. 1, ¶ 5; R. Doc. No. 22-1, at 6, 8.
[37] R. Doc. No. 22-2, ¶ 8.
[38] R. Doc. No. 22-2, ¶ 3; *see also* R. Doc. No. 22-1, at 8 ("Manson Gulf's vessels utilize hourly personnel who provide various levels of skilled labor. These hourly offshore personnel primarily consist of riggers, mechanics, oilers and crane operators.").
[39] R. Doc. No. 22-2, ¶ 4.

and notice shall be sent to: All current and former hourly offshore personnel who were employed as riggers, mechanics, oilers, and/or crane operators and who have been employed at any time by defendant Manson Gulf, LLC within the past three years.[40]

### III. Proposed Notice

Defendant also raises a number of objections to plaintiff's proposed notice as well as the expedited discovery regarding potential class members that plaintiff has requested.[41] Plaintiff's reply does not address such objections.[42] The parties are directed to attempt to resolve such disputes in good faith as ordered below.

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion is **GRANTED IN PART**, as set forth in this order and reasons, and that the above-captioned matter is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

**IT IS FURTHER ORDERED** that defendant's objections to plaintiff's proposed notice are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that counsel for both parties are to meet and confer regarding the proposed notice and consent form no later than **Monday, March 2, 2015**. Counsel must in good faith attempt to resolve any disagreements concerning the notice and consent

---

[40] 29 U.S.C. § 255 provides for a two year limitations period, "except that a cause of action arising out of a willful violation may be commenced within three years." Plaintiff has alleged that Manson Gulf "knowingly, willfully *or* in reckless disregard carried out its illegal pattern or practice of failing to pay Plaintiff and all those similarly situated." R. Doc. No. 1, ¶ 16 (emphasis added). However, Manson Gulf has not challenged the plaintiff's use of the three-year period for notice purposes, *see* R. Doc. No. 23, at 11-15, and any determination as to Manson Gulf's willfulness would be premature at this stage. Accordingly, the Court finds that a three-year period is appropriate.
[41] R. Doc. No. 23, at 11-15.
[42] *See* R. Doc. No. 26.

forms, including but not limited to those regarding: the mailing of a second "reminder notice," the inclusion of the Court's name, the necessity of a disclaimer, the mention of the possibility of decertification, and the appropriate contact information that defendant should be required to provide to counsel for plaintiff.

**IT IS FURTHER ORDERED** that the parties must jointly file a proposed notice and consent form no later than **Monday, March 9, 2015**. If the parties are unable to agree on the proposed notice, the proposed consent form, and/or the discovery to which plaintiff is entitled, parties shall file the appropriate motion(s) for expedited consideration by the U.S. Magistrate Judge no later than **Tuesday, March 10, 2015**.

**IT IS FURTHER ORDERED** that a telephone status conference is scheduled for **Thursday, March 5, 2015, at 9:00 AM**. Counsel must provide the Court with a telephone number at which they can be reached prior to the conference.

New Orleans, Louisiana, February 23, 2015.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**